# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **ALEX GONZALES, SR.,**<br>Individually and as "Next Friend" to<br>minor child Z.A.G. and<br>**ELIZABETH HERRERA**<br>(aka Elizabeth Gonzales),<br>Individually and as "Next Friend" to<br>minor child Z.A.G., | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| | § | **Case No. 1:22-cv-00655-RP** |
| *Plaintiffs,* | § | |
| v. | § | **JURY TRIAL REQUESTED** |
| | § | |
| **CITY OF AUSTIN**<br>*Defendant.* | §<br>§ | |
| | §<br>§<br>§<br>§ | |

| | | |
|---|---|---|
| **ALEX GONZALES, SR.,**<br>Individually and as "Next Friend" to<br>minor child Z.A.G. and<br>**ELIZABETH HERRERA**<br>(aka Elizabeth Gonzales),<br>Individually and as "Next Friend" to<br>minor child Z.A.G., | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| | § | **Case No. 1:23-cv-00009-RP** |
| *Plaintiffs,* | § | |
| v. | § | **JURY TRIAL REQUESTED** |
| | § | |
| **LUIS SERRATO**, and<br>**GABRIEL GUTIERREZ**<br>*Defendants.* | §<br>§<br>§ | |
| | §<br>§<br>§ | |

## PLAINTIFFS' RESPONSE TO
## HENDLER FLORES LAW, PLLC'S FIRST AMENDED MOTION FOR LEAVE TO INTERVENE AS OF RIGHT AND BRIEF IN SUPPORT

# Table of Contents

I.   SUMMARY OF RESPONSE ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 3

III. LEGAL STANDARDS ....................................................................................................... 10

IV.  ARGUMENT AND AUTHORITIES.................................................................................. 11

   A.  Under Texas Law, HFL's Proposed Intervention Claim is not Ripe. Plaintiffs Will Be Severely Prejudiced If HFL is Allowed to Intervene at This Time. ........................................ 11

   B.  The Court Lacks Jurisdiction Over the Proposed Intervention Claim ............................... 14

   C.  HFL Has Not Met the Requirements for Intervention Under FRCP 24(a)(2) ................... 16

      1.  HFL Does Not Have an Interest in the Property or Transaction That is the Subject of This Litigation..................................................................................................................... 16

      2.  Disposition of This Case Will Not Impair HFL's Rights or Interests Because HFL Has Other Adequate Ways to Enforce Its Rights........................................................................ 18

   D.  The Proposed Intervention Claim Would Create an Unnecessary Sideshow That Would Distract From Discovery and Litigation of Plaintiffs' Originally Filed Claims....................... 19

V.   CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Adam Joseph Res. (M) Sdn. Bhd. v. CNA Metals Ltd.*,

     919 F.3d 856 (5th Cir. 2019). ............................................................ 19

*Alam v. Fannie Mae*,

     2007 U.S. Dist. LEXIS 92209, (S.D. Tex. Dec. 12, 2007). ..................... 19

*Bibles v. City of Irving*,

     2009 U.S. Dist. LEXIS 67462 Case No. 3:08-CV-1795-M (N.D. Tex. July 28, 2009). .......... 20

*Bigham v. Southeast Tex. Envtl., LLC*,

     458 S.W.3d 650 (Tex. App.—Houston[14th] 2015). ................................ 13

*Box v. PetroTel, Inc.*,

     33 F.4th 195 (5th Cir. 2022). ............................................................ 15

*Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*,

     744 F. App'x 192 (5th Cir. 2018)...................................................... 20

*Carden v. Arkoma Assocs.*,

     494 U.S. 185 (1990)...................................................................... 15

*Casey v. March*,

     30 Tex. 180 (1867)....................................................................... 17

*Catlin Specialty Ins. Co. v. Ward*,

     2020 U.S. Dist. LEXIS 250696 Case No. 1:20-cv-92 (N.D. Miss. Aug. 24, 2020). ............... 18

*Causey v. State Farm Section I*,

     2018 U.S. Dist. LEXIS 99855 (E.D. La. 2018). ..................................... 16

*Citadel Recovery Servs., LLC v. T.J. Sutton Enters., LLC*,

     2021 U.S. Dist. LEXIS 229250 (E.D. La. March 15, 2021)....................... 18

*Defense Distributed v. United States Dep't of State*,

     2018 U.S. Dist. LEXIS 126388, Case No. 1:15-cv-372 (W.D. Tex. July 27, 2018). ......... 10, 14

*Desilva v. Taylor*,

     2022 U.S. Dist. LEXIS 171318 Case No. 1:21-cv-00129-RP (W.D. Tex. Sep. 22, 2022). ..... 20

*Douglas-Peters v. Cho, Choe & Holen, P.C.*,

     2017 Tex. App. LEXIS 1836 (Tex. App.—Dallas [5th] Mar. 3, 2017)..................... 12

*Grantham v. J&B Sausage Co.*,

     2016 Tex. App. LEXIS 5168 (Tex. App.—Houston [14th] May 17, 2016)............................. 12

*Griffin v. Lee*,

    621 F.3d 380 (5th Cir. 2010). ................................................................. 16

*Gunn v. Minton*,

    568 U.S. 251, 257-65 (2013). ................................................................. 15

*Hoover Slovacek LLP v. Watson*,

    206 S.W.3d 557 (Tex. 2006)............................................................ 11, 12

*Jetall Cos. v. Hoover Slovacek LLP*,

    2022 Tex App. LEXIS 2010 (Tex. App.—Houston[14th] March 29, 2022)............................. 13

*Kneeland v. National Collegiate Athletic Assoc.*,

    806 F.2d 1285 (5th Cir. 1987). ................................................................. 11

*Lake Eugenie Lan & Dev., Inc. v. BP Exploration & Prod.*,

    546 Fed. Appx. 502 (5th Cir. 2013)......................................................... 14

*Levine v. Bayne, Snell & Krause, Ltd.*,

    40 S.W.3d 92 (Tex. 2001)......................................................................... 12

*Mandell & Wright v. Thomas*,

    441 S.W.2d 841 (Tex. 1969)..................................................................... 12

*Martin v. Camp*,

    114 N.E. 46 (N.Y. 1916)........................................................................... 13

*McDonald v. E.J. Lavino Co.*,

    430 F.2d  (5th Cir. 1970). ......................................................................... 14

*McDonald v. E.J. Lavino Co.*,

    430 F.2d 1065 (5th Cir. 1970). ................................................................. 10

*Md. Am. Gen. Ins. Co. v. Blackmon*,

    639 S.W.2d 455 (Tex. 1982)..................................................................... 13

*Mitchell v. Bailey*,

    982 F.3d 937 (5th Cir. 2020). ................................................................... 15

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,

    732 F.2d 452 (5th Cir. 1984). ................................................................... 11

*Owens-Corning Fiberglas Corp. v. Caldwell*,

    818 S.W.2d 749 (Tex. 1991)..................................................................... 13

*Patterson v. Corvel Corp.*,

    2021 U.S. Dist. LEXIS 168456 (W.D. La. Aug. 12, 2021).................................... 16

*Ross v. Marshall,*
> 456 F.3d 442 (5th Cir. 2006). ................................................................. 18

*Rotella v. Cutting,*
> 2011 Tex. App. LEXIS 7116 (Tex. App.—Fort Worth Aug. 31, 2011)................................... 17

*Russell v. Harris County,*
> 2020 U.S. Dist. LEXIS 215333 (S.D. Tex. Nov. 18, 2020)................................. 10, 14

*Saacks v. Privilege Underwriters Reciprocal Exch.,*
> 2017 U.S. Dist. LEXIS 14531, Case No. 16-1149  (E.D. La. Feb. 2, 2017). .......................... 20

*Samuels v. Twin City,*
> 602 Fed. Appx. 209 (5th Cir. 2015). ....................................................... 16

*Sierra Club v. Espy,*
> 18 F.3d 1202 (5th Cir. 1994). ....................................................... 10, 11, 14

*Singh v. Duane Morris LLP,*
> 538 F.3d 334 (5th Cir. 2008). ....................................................... 15

*Slim v. Abuzaid,*
> 2018 U.S. Dist. LEXIS 155488 Case No. 3:16-CV-1769-S-BH (N.D. Tex. Aug. 9, 2018). ... 20

*Strawbridge v. Curtiss,*
> 3 Cranch. 267 (1806). ....................................................... 15

*Tarrant Cty. Hosp. Dist. v. Jones,*
> 664 S.W.2d 191 (Tex. App.—Fort Worth 1984).................................... 17

*Texas v. Real Parties,*
>  259 F.3d 387 (5th Cir. 2001). ....................................................... 20

*Thomson* v. *Findlater Hardware Co.,*
> 205 S.W. 831 (Tex. 1918)....................................................... 17

*Tolliver v. U-Haul Co.,*
> 2017 U.S. Dist. LEXIS 221223, Case No. 09-cv-313 (W.D. La. June 8, 2017). .................... 16

*Town of Chester v. Laroe Estates, Inc.,*
> 581 U.S. 433 (2017)....................................................... 10, 14

*United States v. Betancourt,*
> 2005 U.S. Dist. LEXIS 40483 (S.D. Tex. Dec. 8, 2005). ....................................... 17

*Valley Ranch Dev. Co. v. Fed. Deposit Ins. Corp.,*
> 960 F.2d 550 (5th Cir. 1992). ....................................................... 19

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*,

    834 F.3d 562 (5th Cir. 2016). ............................................................... 10, 11, 14, 18

*Wilkinson v. Susman*,

    2020 Tex. App. LEXIS 8953 (Tex. App.—Houston [14th] Nov. 19, 2020). ......................... 12

*Wood v. Tran*,

    2019 Tex. App. LEXIS 6756 (Tex. App.—Houston [1st] Aug. 6, 2019). .............................. 12

## Statutes

28 U.S.C. §1332 ................................................................................................. 15, 16

28 U.S.C. §1367 ................................................................................................. 15, 16

42 U.S.C. §1983 ................................................................................................. 14, 15

## Other Authorities

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §35(2) (2000). ............................... 12

State Bar of Texas Professional Ethics Committee Opinion No. 610 ........................... 9

Tex. Comm. On Professional Ethics, Op. 610 (2011) ................................................ 17

TEX. DISCIPLINARY R. PROF'L CONDUCT §1.04(a) ...................................................... 12

TEX. DISCIPLINARY R. PROF'L CONDUCT §1.15 .......................................................... 11

## Rules

Fed. R. Civ. P. 11 .............................................................................................. 9

Fed. R. Civ. P. 17 .............................................................................................. 5

Fed. R. Civ. P. 24 ......................................................................................... passim

## I.    SUMMARY OF RESPONSE

Plaintiff Alex Gonzales, Sr. and Plaintiff Elizabeth Herrera Gonzales (collectively "Plaintiffs") oppose the proposed First Amended Plea in Intervention[1] of Hendler Flores Law, PLLC (herein "HFL") on both substantive and procedural grounds.

Substantively, Plaintiffs dispute HFL's contention that Plaintiffs terminated HFL and attorney Scott Hendler without cause. To the contrary, Plaintiffs insist that HFL is not entitled to enforce its contingent fee agreement because Plaintiffs terminated Hendler and HFL for good and sufficient cause.[2] After the present lawsuit concludes, Plaintiffs expect to file claims against HFL and attorney Scott Hendler for professional negligence, breach of contract, and breach of fiduciary duty arising from Hendler's and HFL's prior representation of them in this lawsuit.[3]

Significantly, however, Plaintiffs will be required to use and disclose otherwise privileged information in order to prove that they fired Hendler and HFL for cause.[4] Plaintiffs should not be required to do so now—especially not in the context of this same pending lawsuit. Plaintiffs' have requested that HFL withdraw this motion to intervene and litigate HFL's dispute with Plaintiffs in any other proper forum, but HFL has refused. HFL insists on having this dispute with its former clients right here in this case, in the forum where disclosure of privileged information regarding Hendler's and HFL's misdeeds *would be most prejudicial to Plaintiffs*. By insisting on intervention here, HFL seeks a litigation advantage against its own former clients by making it burdensome and prejudicial for Plaintiffs to disclose the privileged information that they intend to use to prove that they terminated Hendler and HFL for good and sufficient cause.

---

[1] Plaintiffs file this Response to [Dkt. 43] in Case No. 1:22-cv-00655 (herein the "-655 Case") and [Dkt. 32] in Case No. 1:23-cv-00009 (herein the "-009 Case").

[2] *See* Declaration of Donald Puckett ("Puckett Declaration"), Exh. A at ¶30.

[3] *See id.* at ¶30.

[4] *See id.* at ¶31.

1

HFL's proposed First Amended Plea in Intervention against its former clients is not only distasteful; it also is improper procedurally. Under Texas law, HFL's proposed intervention claim is premature because it is not ripe. In Texas, a fired contingent fee lawyer has no legal rights against the former client until the client actually receives money or property that is subject to the contingent fee agreement. This substantive Texas legal rule is intended, in part, to protect the clients' important interest in not being forced prematurely to disclose privileged information in a dispute against the terminated contingent-fee lawyer.

HFL's proposed First Amended Plea in Intervention also is procedurally defective under federal law. First, the Court lacks an independent basis for Article III jurisdiction over HFL's intervention claim, which is required when the proposed intervention claim seeks relief that is different than the relief Plaintiffs seek. Second, HFL has not met the requirements for intervention under Fed. R. Civ. P. 24(a)(2), for several reasons. HFL does not, as required by FRCP 24(a)(2), "claim[] an interest relating to the property or transaction that is the subject of [this] action" because: (1) under Texas law, attorneys and law firms are *ethically prohibited* from obtaining a charging lien on a client's cause of action or a client's future lawsuit recovery; and (2) HFL, at most, has an indirect interest in this litigation because HFL's alleged legal rights are contingent upon certain disputed facts (such as whether HFL was terminated for cause) that do not overlap with the disputed facts in the existing -655 and -009 Cases. Additionally, HFL has not shown, as required by FRCP 24(a)(2), that "disposing of the action may as a practical matter impair or impede [HFL's] ability to protect its interests." HFL's assertions on this point are entirely hypothetical and speculative; and HFL has adequate means for protecting its alleged contractual rights apart from intervention in this case.

If the Court is inclined to grant any part of HFL's request to intervene, the Court should at least: (1) sever HFL's proposed intervention claim and stay litigation until conclusion of

litigation over Plaintiffs' Section 1983 claims, and (2) make clear in the Court's order that HFL has no discovery rights or procedural rights with respect to Plaintiffs' Section 1983 claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed the -655 Case against the City of Austin on July 6, 2022.[5] At that time, attorney Donald Puckett was an employee of HFL and appeared as attorney of record on the Original Complaint (along with attorney Scott Hendler).[6] On August 4, 2022, Plaintiffs served requests for production of documents on the City of Austin that were signed and served by attorney Puckett.[7] In September 2022 through November 2022, Plaintiffs took third-party fact witness depositions of APD Officer Gabrielle Gutierrez, APD Officer Luis Serrato and APD Officer Brian Nenno in the -655 Case; and each of these three depositions was taken by attorney Puckett on behalf of Plaintiffs.[8]

On December 28, 2022, attorney Puckett was fired from the HFL law firm by Scott M. Hendler, suddenly and without warning.[9] On December 29, 2022, Hendler and HFL filed a

---

[5] *See* Original Complaint, -655 Case [Dkt. 1].

[6] *See id.* at p. 35.

[7] *See* Puckett Declaration, Exh. A at ¶6.

[8] *See id.* at ¶6. Because the -009 Case had not yet been filed, and no claims had yet been asserted against Officer Gutierrez or Officer Serrato, these were third-party fact witness depositions only in the -655 Case.

[9] *See id.* at ¶¶7-16. In their reply on their motion to withdraw, Hendler and HFL informed the Court that Puckett "abruptly resigned" from his employment with HFL. *See* Reply Brief, -665 case [Dkt. 29 at p.1 and fn.1], -009 Case [Dkt. 16 at p.1 and fn.1]. Hendler's and HFL's assertion is completely inaccurate. *See* Puckett Declaration, Exh. A at ¶16. Puckett is in possession of a video recording of the December 28, 2022 Zoom meeting in which HFL and Hendler falsely allege that Puckett resigned. *See id.* at ¶7. The recording demonstrates that Puckett repeatedly insisted he was not resigning, to which Hendler responded by saying that he (Hendler) was terminating Puckett's employment immediately. *See id.* at ¶¶8-9, ¶¶11-12. HFL then terminated Puckett's email and electronic computer access to HFL's systems within 30 minutes after the meeting. *See id.* at ¶10. HFL and Hendler filed motions to withdraw Puckett from all of the firm's active civil cases the following day. *See id.* at ¶10.

motion to withdraw Puckett as attorney of record from this lawsuit.[10] At no time did Hendler or anyone from HFL request that Puckett hand off his task list or other work product related to the pending -655 Case.[11] In fact, a few days after HFL terminated Puckett's employment, HFL's outside employment lawyer sent a letter to Puckett instructing him to have no further communications with any HFL attorney or employee regarding Puckett's prior work with HFL, precluding Puckett from making a professional hand-off of his work-related responsibilities.[12]

On January 4, 2023, HFL filed the -009 case against Defendant Gutierrez and Defendant Serrato, with attorney Scott M. Hendler listed as the only attorney of record for Plaintiffs on the Original Complaint for the -009 Case.[13]

The Original Complaints in both the -655 and -009 Cases purported to assert claims in Plaintiff Alex Gonzales, Sr.'s capacity as "Administrator of the Estate of Alex Gonzales, Jr."[14] Alex Gonzales, Sr., however, has never been appointed administrator of his deceased son's estate.[15] Moreover, in both the -655 and -009 Cases the Original Complaints did not assert the wrongful death claims of minor child Z.A.G.,[16] whose claims ordinarily should be brought in the same civil action as other statutory wrongful death claimants.[17]

In February, 2023—for a myriad of reasons that will not be fully explained here[18]— Plaintiffs retained attorney Michael Marconi as independent counsel to advise them on their

---

[10] *See* Plaintiffs' Motion to Withdraw Donald Puckett as Counsel of Record, -655 Case [Dkt. 20] ("Hendler Flores Law . . . respectfully requests that Donald Puckett be permitted to withdraw as counsel of record for Plaintiffs in this matter.").

[11] *See* Puckett Declaration, Exh. A at ¶17.

[12] *See id.* at ¶13 and ¶¶17-18.

[13] *See* Original Complaint, -009 Case [Dkt. 1 at 34].

[14] *See* Original Complaints, -655 Case [Dkt. 1], -009 Case [Dkt. 1].

[15] *See* Puckett Declaration, Exh. A at ¶23.

[16] *See* Original Complaints, -655 Case [Dkt. 1], -009 Case [Dkt. 1].

[17] *See* First Amended Complaints, -655 Case [Dkt. 26 at ¶5], -009 Case [Dkt. 12 at ¶5].

[18] Plaintiffs cannot here explain all of the reasons they sought independent counsel to advise them on their termination rights without revealing privileged information. Plaintiffs emphasize here that

rights with respect to terminating HFL and Hendler under their contingent fee agreement with HFL.[19] On March 24, 2023, Mr. Marconi sent a letter to Hendler and HFL informing them that Plaintiffs had chosen to terminate their attorney-client relationship with HFL.[20] Mr. Marconi's letter further informed HFL that Plaintiffs had retained the Devlin Law Firm ("DLF") and attorney Puckett as replacement counsel for this lawsuit, and instructed HFL to forward the clients' file to DLF and to withdraw from the pending cases no later than April 7, 2023.[21]

Within days of filing a notice of appearance, DLF filed a First Amended Complaint in both the -655 and -009 Cases.[22] Each amended complaint removed references to claims that purportedly had been asserted in Alex Gonzales, Sr.'s capacity as administrator of Alex Gonzales, Jr.'s estate.[23] Each amended complaint also asserted wrongful death claims on behalf of minor child Z.A.G., in Plaintiffs' capacity as "next friend" to Z.A.G.[24] Shortly thereafter, Plaintiffs filed a Motion for Appointment of Guardian Ad Litem in an effort to ensure that the interests of Z.A.G. are adequately protected in these lawsuits.[25]

Mr. Hendler filed a motion to withdraw as counsel of record from the -655 and -009 Cases on April 11, 2023.[26] But Plaintiffs were forced to oppose the motion to withdraw because Hendler and HFL *had not yet begun* to transfer the client file to Plaintiffs' replacement counsel.[27]

---

their reasons for seeking independent counsel and their decision to terminate Hendler and HFL for cause were not limited to the facts and reasons set forth in this response brief.

[19] *See* Puckett Declaration, Exh. A at ¶20.

[20] *See* Puckett Declaration, Exh. A at ¶22. *See also* Exh. B, Termination Letter from Michael Marconi to HFL dated March 24, 2023 ("Marconi Termination Letter).

[21] *See* Exh. B, Marconi Termination Letter.

[22] *See* First Amended Complaints, -655 Case [Dkt. 26], -009 Case [Dkt. 12].

[23] *See id.*

[24] *See id.*

[25] *See* Motions for Appointment of Guardian Ad Litem Pursuant to FRCP17(C)(2), -655 Case [Dkt. 30], -009 Case [Dkt. 17].

[26] *See* Motions to Withdraw Scott M. Hendler as Counsel of Record for Plaintiffs, -655 Case [Dkt. 27], -009 Case [Dkt. 14].

[27] *See* Plaintiffs' Responses to Motions to Withdraw, -655 Case [Dkt. 28], -009 Case [Dkt. 15].

HFL filed a reply, arguing that its delay in transferring the client's file to replacement counsel was not prejudicial because "[t]here are no immediate deadlines in this case that warrant the Court's involvement or otherwise jeopardize the interests of the clients or the case in any way."[28] On April 27, 2023, Plaintiffs filed a notice withdrawing their opposition to Hendler's motion to withdraw, informing the Court that HFL had finally transferred the "reasonably complete" client file to replacement counsel.[29]

DLF's inspection of HFL's litigation file confirmed that, after Puckett was terminated from his employment on December 28, 2022, HFL and Hendler had performed no substantial work related to the -655 Case, and they had performed no substantial work related to the -009 Case other than filing the Original Complaint.[30] Hendler and HFL had allowed the cases to lie dormant for months, even though it was well-known publicly that critical case-related events had occurred. To wit:

- On December 27, 2022, it was announced that a Travis County grand jury had failed to return criminal indictments against either Officer Gutierrez or Officer Serrato.[31]
- In January, 2023, it also was publicly reported that APD would complete its internal affairs review within the 30 days following the grand jury's decision, as required by APD's employment contract with the police union.[32]

---

[28] *See* Reply on Motions to Withdraw, -655 Case [Dkt. 29 at p.4], -009 Case [Dkt. 16 at p. 4]. At the time Plaintiffs terminated Hendler and HFL, Plaintiffs' expert disclosures in the -655 Case were due on March 30, 2023—a deadline that Hendler and HFL were not prepared to meet—thus requiring Plaintiffs' substitute counsel to immediately file a motion to extend this deadline. *See* Unopposed Motion for Extension of Certain Deadlines, -655 Case [Dkt. 24].

[29] *See* Plaintiffs' Notice of Non-Opposition to Motion to Withdraw, -655 Case [Dkt. 34], -009 Case [Dkt. 21].

[30] Puckett Declaration, Exh. A at ¶24.

[31] *See, e.g.,* https://www.kxan.com/news/local/austin/travis-county-da-says-no-indictment-in-deadly-jan-2021-police-shooting-of-alex-gonzales/?ipid=promo-link-block1 (dated December 27, 2022) (last visited July 10, 2023).

[32] *See, e.g.,* https://www.austinchronicle.com/news/2023-01-20/seeking-justice-for-the-killing-of-alex-gonzales/ (dated January 20, 2023) (last visited July 10, 2023).

- On January 25, 2023, it was publicly reported that the Austin Office of Police Oversight had been briefed on the results of APD's internal investigations and had recommended indefinite suspension of Gutierrez.[33]

- On January 26, 2023, it was publicly reported that the Austin Community Police Review Commission had been briefed on the results of APD's internal investigations and had recommended indefinite suspensions for both Gutierrez and Serrato.[34]

- On January 27, 2023, it was publicly reported that APD had determined no administrative discipline was warranted for either Gutierrez or Serrato, and that both officers would immediately be returning to their previous street patrol duties as APD patrol officers.[35]

Despite the occurrence of these important case-related events, HFL and Hendler took no steps at all to obtain documents or discovery related to these events. Indeed, HFL never even asked the City of Austin to supplement its response to previous requests for production in order to obtain documents related to APD's internal affairs investigation or APD's decision to return Gutierrez and Serrato to patrol duty.[36]

On May 23, 2023, after DLF replaced HFL as counsel of record, attorney Puckett made a formal request for the City of Austin to supplement its document production to outstanding requests for production (the same RFPs that Puckett had signed and served when he previously was an employee of HFL), to include all documents related to APD's complete internal affairs investigation.[37] On June 23, 2023, in response to Puckett's request, the City of Austin

---

[33] *See, e.g.,* https://www.austintexas.gov/sites/default/files/files/Office%20of%20Police%20Oversight/Reports%20and%20Recommendations/OPO%20Discipline%20Recommendation%202021-0036_final.pdf (dated January 25, 2023) (last visited July 10, 2023).

[34] *See, e.g.,* https://www.austintexas.gov/sites/default/files/files/Community_Police_Review_Commission/Official%20Documents/CPRC%20Review%20Case%202021-0036.pdf (dated January 26, 2023) (last visited July 10, 2023).

[35] *See, e.g.,* https://www.statesman.com/story/news/crime/2023/01/26/austin-police-officers-not-punished-alex-gonzales-death-2021-shooting/69841113007/ (dated January 27, 2023) (last visited July 10, 2023).

[36] *See* Puckett Declaration, Exh. A at ¶24.

[37] *See id.* at ¶25.

supplemented its document production by producing more than 1,600 additional pages of documents along with additional videos and audio recordings.[38]

Immediately after HFL and Hendler were terminated by Plaintiffs, HFL began taking a series of retaliatory steps against Plaintiffs and their current attorneys.

On March 27, 2023—the very next business day after being informed of Plaintiffs' decision to terminate their attorney-client relationship with HFL—HFL filed a Texas state court lawsuit asserting one claim of tortious interference with contract against Puckett individually and against DLF and the Marconi Law Firm.[39] Significantly, HFL's complaint did not allege any specific wrongful act committed by any of the defendants in furtherance of the alleged tortious interference.[40] Each defendant filed an answer to HFL's tortious interference lawsuit on or about June 5, 2023.[41] Unbeknownst to the defendants to HFL's lawsuit, however, HFL had voluntarily non-suited the state court lawsuit on June 2, 2023, without telling them.[42] Also on June 2, 2023, HFL filed a similar lawsuit for tortious interference, this time in federal court, naming the Devlin Law Firm as the only defendant.[43] HFL's federal lawsuit again asserts just one claim for tortious interference; and again, HFL's federal complaint does not allege any specific wrongful act in furtherance of the alleged tortious interference claim.[44]

---

[38] *See id.* at ¶25.

[39] *See id.* at ¶26. *See also* Exh. C, HFL Original Petition dated March 27, 2023.

[40] *See* Exh. C, HFL Original Petition at ¶16, ¶¶23-24 (alleging "on information and belief" that defendants engaged in unspecified acts of tortious interference).

[41] *See* Puckett Declaration, Exh. A at ¶26. *See also* Exh. D, Answers to HFL Original Petition.

[42] *See* Puckett Declaration, Exh. A at ¶26.

[43] *See id.* at ¶26. *See also* Exh. E, HFL Original Complaint dated June 2, 2023.

[44] *See* Exh. E, HFL Original Complaint at ¶2, ¶16, ¶24 (alleging generally that DLF made "false accusations" about HFL and its attorneys without providing any specifics regarding when or by whom the false statements allegedly were made, and without specifying the content of the alleged false accusations).

On May 12, 2023, HFL filed a Motion for Leave to Intervene as of Right in both the -655 and -009 Cases.[45] HFL's motions for leave asserted HFL's right to intervene in each lawsuits on the basis of HFL's purported lien rights arising under HFL's contingent-fee Retainer Agreement with Plaintiffs.[46] On May 23, 2023, Plaintiffs' current counsel sent HFL a letter pursuant to Fed. R. Civ. P. 11 informing HFL that its assertion of contractual attorney lien rights was frivolous and sanctionable in light of State Bar of Texas Professional Ethics Committee Opinion No. 610, which unambiguously holds: "Under the Texas Disciplinary Rules of Professional Conduct, a lawyer representing a client in litigation may not acquire, by agreement with his client, a lien upon the subject matter of the litigation as a means of securing payment of the lawyer's fee with respect to the litigation."[47]

On June 12, 2023, HFL filed an Amended Motion for Leave to Intervene as of Right in both the -655 and -009 Cases, with each supported by a First Amended Declaration of Scott Hendler and a proposed First Amended Plea in Intervention.[48] HFL's amended motions state that the motions were amended "to clarify the basis of its lien in light of correspondence received from Respondents' Counsel demanding withdrawal of the Motion to Intervene on the ground that the motion violates Fed. R. Civ. P. 11."[49] As just one example of the significant revisions HFL made in its amended motions, the proposed First Amended Plea in Intervention now states: "To the extent a court interprets the contractual language describing the charging lien as providing for a security interest in the underlying claim as opposed to the proceeds from a recovery of the

_____

[45] *See* Motions for Leave to Intervene, -655 Case [Dkt. 38], -009 Case [Dkt. 27].
[46] *See id.*
[47] *See* Puckett Declaration, Exh. A at ¶28. *See also* Exh. F, Rule 11 Letter from Puckett to Hendler and HFL dated May 23, 2023.
[48] *See* First Amended Motions for Leave to Intervene, -655 Case [Dkt. 43, 43-1, 43-2], -009 Case [Dkt. 32, 32-1, 32-2].
[49] *See id.*, -655 Case [Dkt. 43 at 1], -009 Case [Dkt. 32 at 1].

underlying claim, Intervenors expressly disavow such interest in the Respondents' underlying claim."[50]

## III. LEGAL STANDARDS

When considering a motion for leave to intervene under Fed. R. Civ. P. 24, "[f]ederal courts should allow intervention ***when no one would be hurt*** and the greater justice could be attained." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). *See also Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970).

When a party moves to intervene in order to pursue relief that is different than the relief sought by the parties to the existing lawsuit, the proposed intervenor must establish an independent basis for the court's Article III jurisdiction over the proposed intervention claim. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 435 and 439-40 (2017). *See also Russell v. Harris County*, 2020 U.S. Dist. LEXIS 215333 at *11, 2020 WL 6784238 (S.D. Tex. Nov. 18, 2020); *Defense Distributed v. United States Dep't of State*, 2018 U.S. Dist. LEXIS 126388 at *9-10, Case No. 1:15-cv-372 (W.D. Tex. July 27, 2018) (Hon. Robert Pitman).

A party seeking to intervene in a pending civil action under Fed. R. Civ. P. 24 bears the burden of establishing its right to intervene under the requirements of the rule. *See Wal-Mart Stores*, 834 F.3d at 565. A party seeking to intervene as of right under FRCP 24(a)(2) must satisfy a four-prong test, articulated by the Fifth Circuit as follows:

> (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

---

[50] *See* -655 Case [Dkt. 43-2 at p. 4, fn.1], -009 Case [Dkt. 32-2 at p. 4, fn.1].

*Id.* at 565. *See also New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (*en banc*). "If a party seeking to intervene fails to meet any one of those requirements, it cannot intervene as a matter of right." *Sierra Club,* 18 F.3d at 1205. *See also Kneeland v. National Collegiate Athletic Assoc.*, 806 F.2d 1285, 1287 (5th Cir. 1987).

## IV.     ARGUMENT AND AUTHORITIES

### A.     Under Texas Law, HFL's Proposed Intervention Claim is not Ripe. Plaintiffs Will Be Severely Prejudiced If HFL is Allowed to Intervene at This Time.

HFL's proposed intervention should be denied because allowing the dispute between HFL and Plaintiffs to go forward now, in the context of this pending lawsuit, would be severely prejudicial to Plaintiffs. To avoid this very type of prejudice, Texas law makes HFL's proposed intervention claim not ripe for judicial resolution at this time.

Under Texas law, "[w]hen interpreting and enforcing attorney-client fee agreements, it is not enough to simply say that a contract is a contract. There are ethical considerations overlaying the contractual relationship." *Hoover Slovacek LLP v. Watson*, 206 S.W.3d 557, 560 (Tex. 2006). "The attorney's special responsibility to maintain the highest standards of conduct and fair dealing establishes a professional benchmark" that must inform the Court's interpretation and application of a contract between attorney and client. *Id.* at 561.

"Public policy strongly favors a client's freedom to employ a lawyer of his choosing and, except in some instances where counsel is appointed, to discharge the lawyer during the representation for any reason or no reason at all." *Hoover Slovacek*, 206 S.W.3d at 562. *See also* TEX. DISCIPLINARY R. PROF'L CONDUCT §1.15, Comment 4 ("[a] client has the power to discharge a lawyer at any time, with or without cause . . ."). At the same time, Texas law also recognizes that a contingent fee attorney who is terminated prior to the conclusion of the representation may have a valid interest in seeking compensation for the legal services provided prior to termination. *See Hoover Slovacek*, 206 S.W.3d at 563.

To balance the competing interests of a client and a terminated contingent-fee lawyer, the Texas Supreme Court long ago established rules applicable in this context. *See id.* at 563 ("Striving to respect both interests, *Mandell* provides remedies to the contingent-fee lawyer who is fired without cause") (discussing *Mandell & Wright v. Thomas*, 441 S.W.2d 841 (Tex. 1969)). Under Texas law, a contingent fee lawyer may seek to enforce the agreement and recover the full contingent fee *only if* the lawyer was fired without cause, and *only if* doing so would not result in an unconscionable fee. *See Hoover Slovacek*, 206 S.W.3d at 561-62 (citing Tex. Disciplinary R. Prof'l Conduct §1.04(a)). *See also Mandell*, 441 S.W.2d at 847.

An important component of this careful balance of interests is that the lawyer's claim for breach of contract does not become ripe until the client actually recovers money or property that is subject to the contingent fee. *See Hoover Slovacek*, 206 S.W.3d at 562. "In allowing the discharged lawyer to collect the contingent fee from any damages the client recovers, *Mandell* complies with the principle that a contingent-fee lawyer 'is entitled to receive the specified fee *only when and to the extent the client receives payment*.'" *Id.* at 562 (quoting Restatement (Third) of the Law Governing Lawyers §35(2) (2000)) (emphasis added).[51]

This substantive rule of ripeness, which prevents a terminated contingent-fee lawyer from prematurely bringing a claim against a former client, is driven in part by the prejudice and unfairness that would result from forcing the client to divulge privileged information in responding to the terminated lawyer's claim. *See Hoover Slovacek*, 206 S.W.3d at 562 (describing the strong public policy in favor of allowing a client to terminate the attorney-client

---

[51] *See also Levine v. Bayne, Snell & Krause, Ltd.,* 40 S.W.3d 92, 94 (Tex. 2001); *Wilkinson v. Susman*, 2020 Tex. App. LEXIS 8953 at *17-18, 2020 WL 6791057 (Tex. App.—Houston [14th] Nov. 19, 2020); *Wood v. Tran*, 2019 Tex. App. LEXIS 6756, at *8-9, 2019 WL 3559001 (Tex. App.—Houston [1st] Aug. 6, 2019); *Douglas-Peters v. Cho, Choe & Holen, P.C.*, 2017 Tex. App. LEXIS 1836, at *39-40, 2017 WL 836848 (Tex. App.—Dallas [5th] Mar. 3, 2017); *Grantham v. J&B Sausage Co.*, 2016 Tex. App. LEXIS 5168 at *13-14, 2016 WL 2935874 (Tex. App.—Houston [14th] May 17, 2016).

relationship at any time as "a 'firmly established rule which springs from the personal and confidential nature' of the attorney client relationship") (quoting *Martin v. Camp*, 114 N.E. 46, 48 (N.Y. 1916)). HFL's proposed intervention in this case perfectly illustrates the potential for prejudice to the client if a terminated lawyer's claim is allowed to proceed prematurely.

In the -655 Case, Defendant City of Austin served a request for production seeking "[t]he attorneys' fee agreement between you and your legal counsel relating to this Litigation." While they were represented by HFL law firm, Plaintiffs objected on the basis of privilege and withheld production of the HFL contingent fee agreement.[52] HFL's motion for leave and the supporting exhibits, however, each make extensive public disclosures of portions of the contingent fee agreement and its terms.[53] HFL did not even utilize the protective order procedures or file these papers under seal.[54] Plaintiffs did not authorize HFL to disclose this privileged and confidential information.[55]

As discussed above, Plaintiffs contend that they terminated HFL and attorney Scott Hendler for good cause, and that they had compelling reasons to do so. But Plaintiffs will be required to use privileged and confidential information to defend against HFL's proposed

---

[52] *See* Puckett Declaration, Exh. A at ¶32; Exh. G, Plaintiffs' Response to City of Austin Request for Production No. 17.

[53] *See* First Amended Motions for Leave, -655 Case [Dkt. 43 at p.2, 4], -009 Case [Dkt. 32 at p. 2, 4]; First Amended Declarations of Scott M. Hendler, -655 Case [Dkt. 43-1 at ¶3-6], -009 Case [Dkt. 32-1 at ¶3-6]; proposed First Amended Pleas in Intervention, -655 Case [Dkt. 43-2 at ¶¶5-7, ¶10], -009 Case [Dkt 32-2 at ¶¶5-7, ¶10].

[54] HFL's unauthorized disclosures of Plaintiffs' privileged and confidential information is troubling in light of HFL's ongoing fiduciary responsibilities. "Certain privileges and duties applicable to an attorney client relationship . . . continue after the relationship's termination. The general rule is that confidential information received during a fiduciary relationship may not be used or disclosed to the detriment of the one from who the information is obtained, even after termination of the relationship." *Jetall Cos. v. Hoover Slovacek LLP*, 2022 Tex App. LEXIS 2010 at *17, 2022 WL 906218 (Tex. App.—Houston[14th] March 29, 2022) (internal citations omitted). *See also Owens-Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749, 751-52 (Tex. 1991); *Md. Am. Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 458 (Tex. 1982); *Bigham v. Southeast Tex. Envtl., LLC*, 458 S.W.3d 650, 662-63 (Tex. App.—Houston[14th] 2015).

[55] *See* Puckett Declaration, Exh. A at ¶32.

intervention claim, and to assert their counterclaims for professional negligence, breach of contract, and breach of fiduciary duty.[56] This would be highly prejudicial to Plaintiffs,[57] and this is precisely why HFL's proposed intervention claim should not go forward at this time. *See, e.g., Lake Eugenie Lan & Dev., Inc. v. BP Exploration & Prod.*, 546 Fed. Appx. 502, 506 (5th Cir. 2013) (affirming denial of intervention under FRCP 24 because proposed intervention claims, which dealt with hypothetical future settlement distribution, were not ripe). *See also Wal-Mart*, 834 F.3d at 565; *Sierra Club*, 18 F.3d at 1205; *McDonald v. E.J. Lavino Co.*, 430 F.2d at 1074.

### B. The Court Lacks Jurisdiction Over the Proposed Intervention Claim

Under unambiguous U.S. Supreme Court precedent, when a proposed intervenor seeks relief that is different than the relief sought by the parties to an existing lawsuit, the Court must have an independent basis for Article III jurisdiction over the proposed intervention claim. *See Town of Chester*, 581 U.S. at 439-40. *See also Russell*, 2020 U.S. Dist. LEXIS 215333 at *11; *Defense Distributed*, 2018 U.S. Dist. LEXIS 126388 at *9-10. This rule applies to HFL's proposed intervention because HFL seeks relief that is different than the relief sought by Plaintiffs in this lawsuit. Plaintiffs seek a judgment for money damages against Defendants City of Austin, Gutierrez and Serrato on Plaintiffs' claim for wrongful death under 42 U.S.C. §1983.[58] HFL's proposed intervention claim, by contrast, seeks to assert HFL's alleged rights arising under Texas contract law.[59] This Court simply does not have subject matter jurisdiction over HFL's proposed state law "Claim" against non-diverse parties.

---

[56] *See* Puckett Declaration, Exh. A at ¶31.

[57] *See id.* at ¶31.

[58] *See* First Amended Complaints, -655 Case [Dkt. 26 at ¶¶93-98], -009 Case [Dkt. 12 at ¶¶95-101].

[59] *See* proposed First Amended Pleas in Intervention, -655 Case [Dkt. 43-2 at ¶¶5-13 and Prayer], -009 Case [Dkt. 32-2 at ¶¶5-13 and Prayer]. HFL's proposed pleadings would assert one generic "Claim" that depends on HFL's alleged contract rights; but HFL never alleges that Plaintiffs have actually breached the agreement. Instead, HFL's pleading seeks relief in some future hypothetical scenarios that may or may not ever come to pass. *See id.* at ¶¶12-13. The fact that HFL's proposed

First, the Court does not have federal question jurisdiction over HFL's proposed intervention claim because a claim to enforce state law contract rights does not "aris[e] under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. §1331. *See also Box v. PetroTel, Inc.*, 33 F.4th 195, 202 (5th Cir. 2022). *See also Gunn v. Minton*, 568 U.S. 251, 257-65 (2013); *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-40 (5th Cir. 2008).

Second, the Court does not have diversity jurisdiction over HFL's proposed intervention claim because HFL and Plaintiffs are all citizens of Texas.[60] *See* 28 U.S.C. §1332. *See also Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) ("Since its enactment, we have interpreted the diversity statute [§1332] to require 'complete diversity' of citizenship") (citing and quoting *Strawbridge v. Curtiss*, 3 Cranch. 267 (1806)). *See also Mitchell v. Bailey*, 982 F.3d 937, 943 (5th Cir. 2020).

Third, the Court does not have supplemental jurisdiction over HFL's proposed intervention claim because HFL's claims are not "so related [to Plaintiffs' asserted claims] that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. §1367(a). As discussed above, HFL's proposed intervention claim arises from disputed facts that do not overlap substantially with the disputed facts involved with Plaintiffs' asserted claims under 42 U.S.C. §1983, and HFL seeks relief that is different than the relief sought by Plaintiffs. HFL's proposed intervention claim simply does not arise from the same nucleus of common facts as Plaintiffs asserted §1983 claims, and therefore the Court does not have supplemental jurisdiction over HFL's proposed intervention claim.

---

intervention claim, even as plead, depends on such future hypothetical facts demonstrates quite plainly that HFL's claim is not ripe at this time. *See Lake Eugenie*, 546 Fed. Appx. at 506 ("A request for relief is unripe if it rests upon future events that may not occur as anticipated, or indeed may not occur at all.").

[60] *See* proposed First Amended Pleas in Intervention, -655 Case [Dkt. 43-2 at ¶¶1-4], -009 Case [Dkt. 32-2 at ¶¶1-4].

Courts within the Fifth Circuit have frequently denied intervention to a terminated contingent-fee lawyer who cannot establish federal jurisdiction over the proposed intervention claim. *See, e.g. Samuels v. Twin City*, 602 Fed. Appx. 209, 210-11 (5th Cir. 2015) (affirming district court's denial of attorney's motion to intervene due to lack of jurisdiction); *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010) (reversing decision to permit attorney intervention where district court lacked diversity jurisdiction over the intervention claim); *Patterson v. Corvel Corp.*, 2021 U.S. Dist. LEXIS 168456 at *5-7, Case No. 21-cv-1305 (W.D. La. Aug. 12, 2021) (denying attorney's intervention for lack of diversity jurisdiction); *Causey v. State Farm Section I*, 2018 U.S. Dist. LEXIS 99855 at *5-7, 2018 WL 2980066 (E.D. La. 2018) (same); *Tolliver v. U-Haul Co.*, 2017 U.S. Dist. LEXIS 221223 at *3-4, Case No. 09-cv-313 (W.D. La. June 8, 2017) (same). When "[a]n attorney who has formerly represented the plaintiff and intervenes for recovery of attorney's fees from the underlying suit . . . [s]uch claims are not entitled to supplemental jurisdiction under 28 U.S.C. §1367 and the claim must independently satisfy the requirements for federal diversity jurisdiction under 28 U.S.C. §1332." *Tolliver*, 2017 U.S. Dist. LEXIS 221223 at *3-4. *See also Samuels*, 602 Fed. Appx. at 210-11; *Griffin*, 621 F.3d at 388.[61]

### C.    HFL Has Not Met the Requirements for Intervention Under FRCP 24(a)(2)

#### 1.    HFL Does Not Have an Interest in the Property or Transaction That is the Subject of This Litigation

HFL does not have an interest in the property or transaction that is the subject of this litigation, as required by FRCP 24(a)(2), for two independent reasons.

First, HFL's alleged contractual charging lien is prohibited by the Texas rules of attorney ethics, and any such lien is void under Texas law. HFL's proposed intervention claim is predicated on its alleged right to enforce a "contractually agreed to charging lien" on the

---

[61] In addition to the reasons set forth here, the Court also lacks Article III jurisdiction because HFL's proposed intervention claim is not ripe, as discussed in Section IV(A), *supra*.

proceeds of a recovery in the instant action, which HFL asserts arises under Texas common law.[62] HFL significantly misunderstands the applicable law. Texas common law recognizes an attorney *retaining* lien over property that actually comes into the attorney's possession, but Texas law *does not* allow an attorney to hold a charging lien over the subject matter of a client's lawsuit or the future proceeds of a client's lawsuit.[63] None of the Texas cases cited by HFL in its amended motion (at pp. 4-5) authorize an attorney "charging lien" at all. Instead, each of HFL's cited cases recognize only an attorney *retaining* lien on property actually in possession of the attorney.[64] Indeed, the Texas Commission on Professional Ethics issued an opinion in 2011 holding that the Texas rules of ethics strictly prohibit an attorney from obtaining a contractual charging lien from a client.[65] In its proposed First Amended Pleas in Intervention, HFL unilaterally attempts to rewrite the language of the contingent fee agreement[66] by purporting to disclaim any charging lien in the subject matter of Plaintiffs' lawsuits (as opposed to the future

---

[62] *See* -655 Case [Dkt. 43 at 4], -009 Case [Dkt. 32 at 4]. As discussed above, HFL amended its motion to clarify the basis for its intervention, and the amended motion did not include any alternative basis for intervention apart from the alleged charging lien.

[63] *See Casey v. March*, 30 Tex. 180 (1867) (holding that in Texas, there is no common law or statutory lien on a judgment, and a common law lien on the proceeds of the judgment requires that those proceeds be in the attorney's possession). *See also Thomson* v. *Findlater Hardware Co.,* 205 S.W. 831, 832 (Tex. 1918) (quoting MECHEM ON AGENCY).

[64] *See United States v. Betancourt*, 2005 U.S. Dist. LEXIS 40483 at *8-9, 2005 WL 3348908 (S.D. Tex. Dec. 8, 2005) (distinguishing Texas common law retaining lien and holding that a charging lien for attorney services does not exist under Texas common law); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116 at *12-13, 2011 WL 3836456 (Tex. App.—Fort Worth Aug. 31, 2011) (holding that no "common law lien" or "possessory lien" existed because the attorney never possessed the funds at issue); *Tarrant Cty. Hosp. Dist. v. Jones*, 664 S.W.2d 191, 195-96 (Tex. App.—Fort Worth 1984) (recognizing an attorney lien "on money *collected by him* for his client") (emphasis added, citing *Thomson v. Findlater Hardware Co.*, 156 S.W. 301 (Tex. Civ. App.—Austin 1913). As *Thomson* makes clear, "[w]hile an attorney has a lien on money collected by him for his client, he has no such lien for the debt in the hands of the debtor before such money has been collected." *Thomson*, 156 S.W.3d at 303.

[65] *See* Tex. Comm. On Professional Ethics, Op. 610 (2011) (citing Professional Ethics Committee Op. 395 (May 1979, corrected June 1980) and Op. 411 (January 1984)).

[66] *See* -655 Case [Dkt. 43-1 at ¶5], -009 Case [Dkt. 32-1 at ¶5] (quoting the agreement to establish a "charging lien *immediately applicable to this matter* and any and all recoveries . . ." (emphasis added)).

proceeds of the lawsuits).[67] HFL's unilateral attempt to rewrite the agreement is properly viewed as a request to reform the contract, and it nonetheless would fail to save the validity of HFL's alleged charging lien.[68]

Second, HFL fails to meet the requirements of FRCP 24(a)(2) because HFL has, at most, an indirect interest in the subject of this litigation. "The interest required to intervene as of right is a 'direct' interest. By definition, an interest is not direct when it is contingent on the outcome of a subsequent lawsuit." *Ross v. Marshall*, 456 F.3d 442, 443-44 (5th Cir. 2006). Here, HFL's alleged interest in this lawsuit is contingent on numerous disputed facts that require resolution apart from this lawsuit, such as whether Plaintiffs terminated HFL for cause, whether HFL's contingent fee agreement was void when made, and whether HFL's collection of a full contingent fee would be unconscionable. Thus, HFL's interest in the subject of this litigation is indirect (at best), which is insufficient to meet HFL's burden to show entitlement to intervene under FRCP 24(a)(2). *See Ross*, 456 F.3d at 443-44. *See also Wal-Mart*, 834 F.3d at 568 ("[A]n economic interest is not sufficiently direct when the intervenor's interest will only be vindicated be a separate legal action . . ."); *Citadel Recovery Servs., LLC v. T.J. Sutton Enters., LLC*, 2021 U.S. Dist. LEXIS 229250 at *17-18, 2021 WL 5505533 (E.D. La. March 15, 2021); *Catlin Specialty Ins. Co. v. Ward*, 2020 U.S. Dist. LEXIS 250696 at *3, Case No. 1:20-cv-92 (N.D. Miss. Aug. 24, 2020).

### 2. Disposition of This Case Will Not Impair HFL's Rights or Interests Because HFL Has Other Adequate Ways to Enforce Its Rights

HFL has not met its burden to show that disposition of this case will impair its alleged legal rights under the contingent fee agreement. HFL's amended motion and supporting

---

[67] *See* -655 Case [Dkt. 43-2 at 4 fn.1], -009 Case [Dkt. 32-2 at 4 fn.1].
[68] Under Texas law, the question of whether a contingent fee contract is unconscionable or against public policy is adjudged from the time the contract is made. *See Hoover Slovacek*, 206 S.W. 3d at 562.

documents assert nothing more than hypothetical future scenarios involving a hypothetical settlement that may be structured in hypothetical ways and that might, in theory, impair HFL's rights in the future in some unspecified way.[69] HFL's speculation and conjecture are insufficient to meet HFL's burden under FRCP 24(a).

The question of whether HFL's interests will be impaired by resolution of this lawsuit "focuses on practical consequences."[70] Unless HFL "can show actual collusion between his clients and other parties or an actual attempt to deny him his fee . . . the refusal of intervention cannot, as a matter of law, impair or impede his ability to protect his interest."[71] Here, HFL has sufficient ways, apart from intervention in these cases, to protect its alleged contractual rights. HFL "may file its own lawsuit to collect its purported debt, and nothing decided in this case will operate to estop it from fully pressing its claims."[72] Indeed, HFL has *already* filed at least two separate lawsuits, against Plaintiffs' replacement lawyers, seeking to recover HFL's alleged damages as a result of HFL's termination by Plaintiffs. HFL apparently has no qualms seeking to enforce its alleged contractual rights in forums other than intervention in the -655 and -009 Cases. HFL has not shown, apart from pure speculation, that its alleged rights will be impaired by resolution of this lawsuit.

### D. The Proposed Intervention Claim Would Create an Unnecessary Sideshow That Would Distract From Discovery and Litigation of Plaintiffs' Originally Filed Claims

If HFL is permitted to intervene and allowed immediately to litigate its proposed intervention claim, it will create a sideshow distraction that will complicate litigation of this case.

---

[69] *See* -655 Case [Dkt. 43 at 5, Dkt. 43-1 at ¶12, Dkt. 43-2 at ¶¶12-13], -009 Case [Dkt. 32 at 5, Dkt. 32-1 at ¶12, Dkt. 32-2 at ¶¶12-13].

[70] *Adam Joseph Res. (M) Sdn. Bhd. v. CNA Metals Ltd.*, 919 F.3d 856, 867 (5th Cir. 2019).

[71] *Valley Ranch Dev. Co. v. Fed. Deposit Ins. Corp.*, 960 F.2d 550, 556 (5th Cir. 1992).

[72] *Alam v. Fannie Mae*, 2007 U.S. Dist. LEXIS 92209, at *12, 2007 WL 4411544 (S.D. Tex. Dec. 12, 2007).

As one relevant example, several of the lawyers involved in this case likely will be fact witnesses in the dispute between Plaintiffs and HFL, potentially subject to discovery and deposition.[73] As previously discussed, Plaintiffs would be required to use otherwise privileged information to defend against HFL's intervention claim. These and other similar issues potentially would turn this already complicated, multi-party dispute into an unmanageable three-ring circus.

If the Court is inclined to permit HFL's intervention in these cases at all, it has the authority to sever and stay the intervention claim and/or enter other appropriate orders to avoid complication and distraction from the underlying lawsuit.[74] At a minimum, Plaintiffs request that the Court: (1) sever HFL's proposed intervention claim from the pending cases, (2) stay HFL's proposed intervention claim until the conclusion of the pending cases, and (3) order that HFL has no discovery rights or other procedural rights with respect to litigation of Plaintiff's claims against the party Defendants to the -655 and -009 Cases.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to deny HFL's First Amended Motion for Leave to Intervene as of Right.

---

[73] *See* Puckett Declaration, Exh. A at ¶33.
[74] *See, e.g. Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*, 744 F. App'x 192, 194 (5th Cir. 2018); *Texas v. Real Parties*, 259 F.3d 387, 390 (5th Cir. 2001); *Desilva v. Taylor*, 2022 U.S. Dist. LEXIS 171318 at *3-4, Case No. 1:21-cv-00129-RP (W.D. Tex. Sep. 22, 2022); *Slim v. Abuzaid*, 2018 U.S. Dist. LEXIS 155488, at *2-3, Case No. 3:16-CV-1769-S-BH (N.D. Tex. Aug. 9, 2018); *Saacks v. Privilege Underwriters Reciprocal Exch.*, 2017 U.S. Dist. LEXIS 14531, at *11-13, Case No. 16-1149  (E.D. La. Feb. 2, 2017). *Bibles v. City of Irving*, 2009 U.S. Dist. LEXIS 67462, at *17, Case No. 3:08-CV-1795-M (N.D. Tex. July 28, 2009).

Dated: July 10, 2023

<div style="margin-left: 50%;">

/s/ Donald Puckett
Donald Puckett (Texas Bar No. 24013358)
Clifford Chad Henson (Texas Bar No. 24087711)
 (*Application for admission forthcoming*)
**DEVLIN LAW FIRM LLC**
1526 Gilpin Ave.
Wilmington, DE 19806
Telephone: (302) 449-9010
dpuckett@devlinlawfirm.com
chenson@devlinlawfirm.com

*Attorneys for Plaintiffs*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

<div style="margin-left: 50%;">

/s/ Donald Puckett
Donald Puckett

</div>